**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PEARL MUSICAL INSTRUMENT CO. LTD,<br><br>    Plaintiff,<br><br>      v.<br><br>HOSHINO GAKKI CO., LTD. and HOSHINO (U.S.A.) INC.,<br><br>    Defendants.<hr>HOSHINO GAKKI CO., LTD. and HOSHINO (U.S.A.) INC.,<br><br>    Counterclaim-Plaintiffs<br>      v.<br><br>PEARL MUSICAL INSTRUMENT CO. LTD, and<br>PEARL CORPORATION,<br><br>    Counterclaim-Defendants. | Case No. 2:23-cv-03220-KNS |

**FIRST AMENDED COMPLAINT**

Plaintiff Pearl Musical Instrument Company Limited, by and through its undersigned counsel, complains and alleges against Defendants Hoshino Gakki Co., Ltd. and Hoshino (U.S.A.) Inc. (collectively, "Hoshino" or "Defendants"), as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and specifically § 271, for Defendants' infringement of U.S.

Patent No. 7,671,261 ("the '261 Patent") and for trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

2. This action arises from Defendants' use, sale, offer for sale, and/or importing of products, and conduct of activities, that infringe PMI's patent and trade dress rights.

3. The present First Amended Complaint is directed against both Defendants and supersedes the prior Complaint filed in this action.

## THE PARTIES

4. Plaintiff Pearl Musical Instrument Company Limited ("PMI" or "Plaintiff") is a company organized under the laws of the country of Japan with a principal place of business located at 10-2-1, Yachiyodai Nishi, Yachiyo City, Chiba, Japan.

5. On information and belief, Defendant Hoshino Gakki Co., Ltd. ("Hoshino Japan") is a corporation organized under the laws of the country of Japan with a principal place of business located at No. 22, 3-Chome, Shumoku-Cho, Higashi-Ku, Nagoya, Aichi, 461-8717, Japan.

6. On information and belief, Hoshino (U.S.A.) Inc. ("Hoshino America") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1726 Winchester Road, Bensalem, PA 19020.

## JURISDICTION AND VENUE

7. This Court has original and exclusive subject matter jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1338(a) because it arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. as well as the trademark laws of the United States, 15 U.S.C. § 1051 et seq.

-2-

8.      This Court has general and/or specific personal jurisdiction over Defendants because Defendants' contacts with the Commonwealth of Pennsylvania are significant and pervasive, and because Defendants' contacts with Pennsylvania, as described in this Complaint, directly give rise to this dispute. Upon information and belief, Hoshino Japan makes, uses, sells, offers for sale and imports into the United States musical instruments, including percussion instruments and related hardware and accessories for percussion instruments, particularly drums and drum carriers used by marching bands.  Upon information and belief, Hoshino America is a wholly-owned subsidiary of Hoshino Japan and has a principal role of offering for sell, selling, distributing, importing and promoting Hoshino Japan's products in the United States through its facility and office in Pennsylvania, including its principal place of business located in this District in Bensalem, Bucks County, Pennsylvania.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) – (d) and/or 1400(b) at least because Defendants reside in this District, have a regular and established place of business in this District, and have committed acts of patent infringement and trade dress infringement in this District.  Venue is also proper in this Court in that Defendants previously have expressly consented to venue in this district, without preserving any objections of any form to the same, and have interposed patent counterclaims against Plaintiff/Counterclaim-Defendants in this district, by which they have sought and obtained the benefit of venue in this district.

## **PATENT-IN-SUIT**

10.      On March 2, 2010, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '261 Patent, titled *Musical Instrument Carrier and Related Methods*.  A true and correct copy of the '261 Patent is attached as **Exhibit A**.

11.      PMI is the owner and assignee of all rights, title, and interest in the '261 Patent.

12.     PMI holds the right to sue for and collect all damages and other relief for infringement of the '261 Patent, including past infringement.

13.     On February 20, 2024, Defendant Hoshino Japan filed an *ex parte* reexamination request with the USPTO regarding the '261 Patent. In the request, Defendant Hoshino Japan alleged that the '261 Patent was invalid and asked the USPTO to invalidate the '261 Patent.

14.     Pursuant to Defendant Hoshino Japan's request, the USPTO instituted a reexamination proceeding and reexamined the '261 Patent.

15.     During reexamination, PMI cancelled claims 21 and 22 of the '261 Patent, and the patentability of claims 1-20 and 23 of the '261 Patent was confirmed by the USPTO.

16.     On March 11, 2025, the USPTO terminated reexamination and issued a Notice of Intent to Issue a Reexamination Certificate. On April 16, 2025, the USPTO issued an *Ex Parte* Reexamination Certificate. A copy of the '261 Patent *Ex Parte* Reexamination Certificate is attached hereto as **Exhibit B**.

17.     The '261 Patent is a valid and enforceable patent.  The '261 Patent has a presumption of validity as a matter of law pursuant to 35 U.S.C. §282.

## BACKGROUND

18.     PMI, a manufacturer and seller of drums, percussion musical instruments and flutes for, among other markets, the United States, was founded in 1946 in Tokyo, Japan.  Over the ensuing 79 years, PMI has become an iconic global leader in the musical instrument industry with its products being played by musicians in every imaginable genre of music.

19.     PMI designs, develops, markets, manufactures, and sells instruments to meet many musical needs, including drums and drum carriers for marching band percussionists (i.e., drummers).

20.     In the marching band world, a marching band battery is a percussion section featuring drummers who carry and play drums while marching.

21.     A marching band battery is generally comprised of drummers playing snare drums, bass drums, and tenor drums (which are sometimes called "toms" and typically come mounted in sets of 4-6 drums).

22.     These percussion instruments are specially designed to be played while moving, which is achieved by attaching a drum or drums to a carrier worn by the artist.  Indeed, a drum carrier is an absolute necessity for a drummer in a marching band battery.

23.     Marching band drummers require a drum carrier that is, among other things, structurally and functionally reliable under the extreme physical forces of movement while comfortable to wear. Drum carriers, however, have historically been heavy, uncomfortable metal contraptions that impede marching band drummers from performing their best—particularly in marching band competitions.

### *PMI DEVELOPS AND PATENTS AN IMPROVED, SUCCESSFUL DRUM CARRIER*

24.     In the mid-2000s, recognizing a need for improvement in drum carriers, PMI designed a new, lightweight marching drum carrier that provided enhanced performance capabilities, was less susceptible to structural failure, was easy to maintain, and was adjustable for different body sizes.

25.    On December 24, 2008, PMI filed United States Patent Application No. 12/343,913 directed to its newly developed marching drum carrier.  PMI's patent, the '261 Patent, issued therefrom on March 2, 2010.

26.    The '261 Patent discloses and claims various inventions as demonstrated by representative Claim 1 of the '261 Patent ("Patented Drum Carrier"), which recites:

> A body-supportable musical-instrument carrier, comprising:
>
> a rigid tubular frame comprising a substantially U-shaped intermediate section and first and second end sections at opposite ends of the substantially U-shaped intermediate section, the substantially U-shaped intermediate section substantially conforming to shoulder and upper back regions of a user for resting on the shoulder regions and extending across the upper back region of the user in use, the first and second end sections extending downward substantially parallel to one another for resting in front of a front torso region, including along an abdomen region, of the user in use;
>
> a belly plate;
>
> first mounting members mountable on the belly plate and engageable with the first and second end sections, respectively, of the rigid tubular frame for securing the belly plate to the rigid tubular frame; and
>
> second mounting members mountable on the belly plate and engageable with a musical instrument for securing the musical instrument to the body-supportable musical-instrument carrier.

27.    At least as early as May of 2010, PMI began manufacturing, marketing, importing, promoting, offering to sell, and selling its Patented Drum Carrier in the United States as the CX Airframe Carrier ("CX Series Carrier").

28.    PMI promotes, markets, offers to sell, and sells musical instruments and related products, including the CX Series Carrier, through its wholly owned United States subsidiary, Pearl Corporation, a corporation organized under the laws of Tennessee, with a principal place of

business at 549 Metroplex Drive, Nashville, Tennessee 37211. ("Pearl USA") (PMI and Pearl USA collectively referred to as "Pearl").

29.     PMI imports, promotes, manufactures, markets, offers to sell, and sells different models of its CX Series Carrier, which may be used to carry a snare drum, a bass drum, or a tenor drum, depending on the instrument.

30.     Since release, PMI's CX Series Carriers have been met with great fanfare and success and are recognized as a premium line drum carrier due to, among other things, their light weight, adjustability, durability, comfort, and appearance.

31.     Indeed, PMI's CX Series Carriers are now the best-selling marching drum carriers in the United States, representing approximately 90 percent (90%) of the marching drum carrier market.

32.     Although PMI's CX Series Carriers are available for purchase by individuals, a large portion of the customer base for the CX Series Carriers is educational institutions (e.g., high schools and colleges) and competitive marching band corps.

33.     Historically, these educational institutions and marching band corps purchase all or nearly all of their percussion instruments and related products from a single source, such as Pearl.

*DEFENDANTS ARE COMPETITORS WITH PEARL*

34.     Hoshino manufactures, markets, imports, offers to sell and sells drums and drum accessories, including marching drum carriers, in the United States under the brand name "TAMA." *See* Product Information | HOSHINO GAKKI CO. LTD., https://company.hoshinogakki.co.jp/products (last visited June 27, 2025).

35. Under the TAMA brand, Hoshino manufactures, markets, imports, offers to sell, and sells marching versions of snare drums, bass drums, and tenor drums as well as drum carriers for the same.

36. United States visitors to Hoshino Japan's website are directed to TAMA's United States website, which identifies its affiliation with Hoshino America. *See* TAMA Drums, https://www.tama.com/usa/ (last visited June 27, 2025).

37. Hoshino America's website identifies itself as a subsidiary of Hoshino Japan, and states that it is "manufacturer and distributor of: … TAMA" and other Hoshino products. *See* Hoshino (U.S.A.) Inc., https://www.hoshinousainfo.com/ (last visited June 27, 2025).

38. Hoshino America's website further states that "Hoshino Gakki Co., Ltd., based in Japan, is the owner of the … Tama drum brand name[]." *Id.*

39. Under the TAMA brand name, Defendants manufacture, market, distribute, and sell marching drums and drum carriers in direct and indirect competition with Pearl.

40. As alleged further *infra*, in 2023 Hoshino released a new marching drum carrier, named the TAMA "Fieldstar" Carrier, which infringes the '261 Patent.

## **DEFENDANTS' KNOWLEDGE OF THE '261 PATENT**

41. As competitors, PMI's patents, including the '261 Patent, are well known to Defendants. According to the USPTO's database, Hoshino Japan has applied for and prosecuted at least two United States patent applications, which have resulted in issued patents or published patent applications that cite the '261 Patent as prior art.

42. On August 7, 2012, in a Non-Final Rejection of Hoshino Japan's U.S. Patent Application No. 13/212,201, that eventually issued as U.S. Patent No. 8,420,919, a USPTO

Examiner cited the '261 Patent as relevant prior art, thereby giving Hoshino Japan a reason to review the '261 Patent for at least this purpose.

43. Moreover, Hoshino Japan has also specifically discussed the '261 Patent in its patent applications. For example, as set forth in the following excerpt from Hoshino Japan's own U.S. Patent Application No. 17/672,584, filed February 15, 2022, Hoshino Japan specifically referenced and described PMI's Patented Drum Carrier, explaining:

> [A] marching carrier disclosed in U.S. Pat. No. 7,671,261 includes a belly plate, which covers the abdomen region of a player, and a carrier main body, which rests on the shoulder regions and is fixed to the belly plate. The carrier main body includes a substantially U-shaped rod that extends from the back region to the abdomen region via the shoulder regions. The carrier main body includes cushions at sections contacting the back region or the shoulder regions. The belly plate also includes cushions at sections contacting the abdomen region. The cushions reduce the load put on the player due to the weight of the marching carrier.

(U.S. Pub. No. 2022/0375440 at [0003]).

44. Pearl has provided Defendants with additional notice of the '261 Patent. On April 10, 2023, and again on May 18, 2023, Pearl advised Defendants in writing of its belief that the Tama Fieldstar Carriers were being marketed, imported, sold, and/or offered for sale in the United States in contravention of the claims of the '261 Patent and in direct competition with Pearl and Pearl's drum carriers protected by the '261 Patent. Both of Pearl's letters specifically identified the '261 Patent and explained that the TAMA Fieldstar Carrier and use of the TAMA Fieldstar Carrier by others infringe the '261 Patent.

45. Accordingly, at all relevant times, Defendants have had actual knowledge of the '261 Patent and that the '261 Patent covers the TAMA Fieldstar Carrier and use of the same.

**DEFENDANTS' INFRINGEMENT OF THE '261 PATENT**

46.    From February 8, 2023, to February 11, 2023, the Texas Music Educators Association held its annual conference ("TMEA Conference") in San Antonio, Texas.  This annual four-day convention is the largest of its kind in the nation, hosting over 29,000 attendees (including over 10,000 active music educators).

47.    Hoshino attended the 2023 TMEA Conference as an exhibitor and exhibited products at its conference booth, including TAMA marching drums and drum carriers.

48.    Pearl also attended the 2023 TMEA Conference and discovered that Hoshino was marketing a new marching drum carrier—the TAMA Fieldstar Carrier.

49.    During the 2023 TMEA Conference, Hoshino displayed the infringing TAMA Fieldstar Carriers at its conference booth.

50.    Hoshino further marketed the infringing TAMA Fieldstar Carriers on social media, posting pictures and stating "[h]ave a look at our newly released Fieldstar carriers. They're designed to be lighter, more adjustable, and better accommodate athletic movement during performances thanks to their center-mounted J-bars.  Come by booth #659 to check them out." *E.g.,* TAMA | BERGERAULT USA [@tamabergeraultusa]. Photo of TAMA Fieldstar Carrier. *Instagram*, 9 Feb. 2023, https://www.instagram.com/p/Coc_30SsqB4/?img_index=2



51.     Following the 2023 TMEA Conference, Pearl discovered that in November of 2022, Hoshino had entered into a partnership to equip one of the country's preeminent competitive drum and bugle corps—The Bluecoats Drum and Bugle Corps (the "Bluecoats")—with TAMA marching instruments and accessories—including drum carriers.

52.     Pearl's investigation further revealed evidence that Defendants are making, using, importing, offering to sell, selling within the United States, and inducing others to use, the infringing TAMA Fieldstar Carriers by, at minimum, selling or providing TAMA Fieldstar Carriers to the Bluecoats.

53.     For example, a video taken on July 5, 2023, shows the Bluecoats using the TAMA Fieldstar Carrier at a Drum Corp International event held in Mason, Ohio, on that date.  *See*

Bluecoats    Drumline    2023    -    Show    Music    -    7/5    DCI    Mason,
https://www.youtube.com/watch?v=2gUT7qEh-I0 (last visited June 27, 2025).

54.    Still images taken from the July 5, 2023, Bluecoats video on YouTube® show that Hoshino's TAMA Fieldstar Carriers satisfy all of the claim elements—either literally or under the doctrine of equivalents—of at least representative Claim 1 of the '261 Patent.

55.    As illustrated by the arrows in the below images, the TAMA Fieldstar Carriers possess a rigid tubular frame with a U-shaped intermediate section that engages a user's back while extending over the shoulders to provide a stable and secure foundation for the carrier (red arrows); first and second end sections that extend downward substantially parallel to one in front of a front torso region (blue arrows); a belly plate (green arrows); mounting members mountable on the belly plate that secure the a rigid tubular frame (yellow arrows); and members mountable on the belly plate for securing the musical instrument to the carrier (purple arrows):



Bluecoats Drumline 2023 - Show Music - 7/5 DCI Mason                    https://www.youtube.com/watch?v=2gUT7qEh-I0



Bluecoats Drumline 2023 - Show Music - 7/5 DCI Mason    https://www.youtube.com/watch?v=2gUT7qEh-I0

56. Defendants' Instagram, described as "[t]he official page of TAMA | BERGERAULT marching and concert percussion," contains numerous posts—most of which post-date PMI's infringement notification letters of April 10, 2023, and May 18, 2023—marketing the TAMA Fieldstar Carrier and showing use by the Bluecoats. *See* TAMA | BERGERAULT USA [@tamabergeraultusa]. *Instagram*, https://www.instagram.com/tamabergeraultusa/.

57. Representative examples, include:



TAMA | BERGERAULT USA [@tamabergeraultusa]. Video of the Bluecoats using the TAMA Fieldstar Carrier at Military Park from DCI '23. *Instagram*, 16 Aug. 2023, https://www.instagram.com/p/CwAhe2_tMjD/;



TAMA | BERGERAULT USA [@tamabergeraultusa]. Photos of the 2023 DCI World Championship Silver Medalists, the Bluecoats, using the TAMA Fieldstar Carrier. *Instagram*, 12 Aug. 2023, https://www.instagram.com/p/Cv3ndQJMeur/?img_index=1;



TAMA | BERGERAULT USA [@tamabergeraultusa]. Video of the Bluecoats using the TAMA Fieldstar Carrier at DCI San Antonio. *Instagram*, 25 July 2023, https://www.instagram.com/p/CvIB80DNbOR/; and



TAMA | BERGERAULT USA [@tamabergeraultusa]. Photos of the Bluecoats using the TAMA Fieldstar Carrier at DCI Mason. *Instagram*, 12 July 2023, https://www.instagram.com/p/CumwdMnAlg4/?img_index=2.

58.    Although Defendants were already providing the TAMA Fieldstar Carriers to at least the Bluecoats, by at least January of 2024, Defendants began sending information about inventory models and pricing to their dealers and also began accepting initial orders for the TAMA Fieldstar Carriers with delivery slated for July of 2024.

59.    In July of 2024, TAMA Fieldstar Carriers began arriving to individuals, high school marching bands, college marching bands, and competitive marching band corps that had placed orders for the TAMA Fieldstar Carriers either directly with Defendants or through retail distributors—e.g., Steve Weiss Music, Inc., Guitar Center, Inc., or Sweetwater Sound, LLC.

60.     Similar to Pearl having different models of its Patented Drum Carriers, Defendants also make and sell different models of the TAMA Fieldstar Carrier for attachment to snare drums, tenor drums, and bass drums. *See* Marching Carriers | TAMA | BERGERAULT https://www.tama.com/usa/products/marching/marching_carrier/ (last visited June 27, 2025).

61.     Defendants also manufacture and sell an "All Access" line of TAMA Fieldstar Carriers, which Hoshino touts as being "lightweight and adjustable thanks to their J-bar mounting system [that] accommodates instruments from various manufacturers"—e.g., snare drums, tenor drums, and bass drums manufactured by PMI. *See* Tama Drums | Fits the Bill, https://www.tama.com/usa/news/detail/20240717043920.html (last visited June 27, 2025).

62.     Defendants' accused products fall directly within the scope of the '261 Patent, and PMI has never legally or factually disclaimed the right to sue for infringement of products falling within the scope of the limitations of the claims of the '261 Patent.

63.     With actual knowledge of the '261 Patent, Defendants are actively making, using, importing, offering to sell, and selling within the United States the infringing TAMA Fieldstar Carriers.

64.     Defendants at all relevant times have directly infringed and induced infringement of the '261 Patent.

**DEFENDANTS' INFRINGEMENT OF PLAINTIFF'S TRADE DRESS RIGHTS**

65.     In addition to the '261 Patent, Plaintiff owns various trademark rights to its CX Series Carriers.

66.     The non-functional aspects of PMI's product designs for its CX Series Carriers constitute protectable trade dress ("PMI's Trade Dress"). PMI's Trade Dress has established

-17-

secondary meaning in the marketplace such that purchasers, including, without limitation, musical educators and marching band members in this Judicial District, identify PMI as the source of the CX Series Carriers.

67. The overall appearance of the design of PMI's CX Series Carriers is protectable, distinctive, non-functional trade dress including one or more identifiable features, that alone and in combination, serve to identify PMI as the source of the CX Series Carriers.

68. PMI's trade dress rights are rights to the characteristics of the visual appearance of PMI's CX Series Carriers.

69. PMI's trade dress rights have also accrued through the sales in excess of 17 million dollars of PMI's CX Series Carriers for over approximately 15 years, which incorporates PMI's protectable trade dress.

70. The designs of PMI's CX Series Carriers—including their external visual and physical appearance (and particularly the color scheme)—are unique and distinctive in the marketplace, distinguishing their visual image and overall appearance of their products in comparison with competitors' products.

71. PMI's trade dress rights include rights to the visual appearance of its CX Series Carriers, which provide the visual appearance, both alone and in combination with one or more other design features of:

a. A drum carrier having a u-shaped rigid tubular or rod frame that rests on the shoulders and across the back of the user, a transition area having frame sections extending horizontally across the wearer's chest toward each other, two portions of the frame extending

downward from the transition area with a consistent distance therebetween for attachment to a belly plate;

b. Shoulder pad(s) removably attached to a rigid frame via proportionally spaced flexible hook and loop fasteners such that at least two fasteners are visible above each shoulder apex when worn, the shoulder pads further being proportionally wider than the rigid frame, the shoulder pads having a stitched border that runs along and near the edge of the shoulder pads, collectively the shoulder pad(s) being u-shaped with rounded ends positioned at or near the front of each shoulder of the wearer when worn, and the shoulder pads attached such that a substantial portion of the rigid frame is visible above the shoulder pads when in use;

c. A rectangular elongated plate attached to and extending between the two downward extending sections of the drum carrier at or near the transition area and downward extending frame portions;

d. An elliptically shaped belly plate with an arcuate shaped top line substantially perpendicular to the two sections of the downwardly extending frame, and having a pad with a visible edge at or near the belly plates perimeter;

e. The belly plate also having two elongated belt-receiving slots, one of each located near the side edge of the belly plate;

f. A mounting mechanism positioned on an exposed surface of the belly plate for engaging the downward extending portions of the frame and holding two J-mounts or rods capable of receiving a drum;

g.    The carrier is substantially unicolor where substantially all of the major visible components of the carriers are of the same color; and

h.    The color scheme for all of the foregoing design elements—including the frame, shoulder pads, belly plate, and central plate—is the color black.

72.    The combination and arrangement of the design elements set forth above constitute the trade dress owned by PMI and are widely recognized by the general consuming public of the United States as designations of the source of PMI's goods or services.

73.    PMI has extensively and exclusively sold its CX Series Carriers—only in the color black color scheme—throughout the United States over the years, from 2010 to the present, incorporating PMI's Trade Dress listed above, with such products having been sold either directly by Plaintiffs and/or through authorized distributors.

74.    PMI's Trade Dress is not essential to the functional use or purpose of its CX Series Carriers, and the trade dress is non-functional.

75.    PMI created its CX Series Carrier designs, including their trade dress, and have extensively marketed, promoted, and sold their products, including its associated trade dress, through extensive time, labor, skill, and money.

76.    As a result thereof, Plaintiffs' products have been extensively sold throughout the United States, and, have become an extremely popular marching drum carrier design, including the leading marching carrier for high school and college marching band markets.

77.    In addition to being distinctive, PMI's trade dress has acquired secondary meaning, and is recognized as identifying Plaintiff as the source of the CX Series Carrier.

78.    Defendants manufacture and distribute products that are intended to copy, imitate, or mimic PMI's trade dress and products.

79.    Hoshino's use of PMI's trade dress, for the same type of goods, are individually, and collectively, intended, and likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Hoshino with PMI, or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff.

80.    Numerous alternative constructions perform the same drum carrier function as PMI's Trade Dress. For many years, Hoshino implicitly understood and acknowledged that PMI's Trade Dress was valuable.

81.    Indeed, for several years following PMI's release of the CX Series Carriers, Hoshino made, used, sold and marketed drum carriers similar to (1) the "Tama Silver Armor Drum Carrier" and (2) the "Tama Starlight Drum Carrier." Representative photographs of each of these carriers appear below:

**Silver Armor Marching Snare Carrier**          **Tama Starlight Drum Carrier**



82.    In February of 2023, however, Hoshino introduced its Tama Fieldstar Carrier in the United States with a design that plagiarizes PMI's trade dress. As shown in the below representative photographs, Hoshino's TAMA Fieldstar Carrier is shown in the right photograph and Pearl's CX Airframe Carrier in the left photograph:

**Pearl's CX Series Carrier (Snare)**    **Hoshino's TAMA Fieldstar Carrier (Snare)**




83.    The similarities between the two marching drum carriers are striking, and Hoshino's products are virtually identical to PMI's products in terms of their visual appearance, particularly including the elements of design, texture and color scheme of the drum carrier.

84.    Hoshino's TAMA Fieldstar Carriers clearly imitate:

a.    PMI's shoulder pad design, including the shape of the pads, the use of cylindrical hook and loop fasteners for attaching the pads to the frame, the sizing, location,

-22-

and spacing of the fasteners, the texture of the material covering the pads, the proportional relationship of the frame width to pad width, and the stitched border that covers the edges of the shoulder pads;

b.    PMI's framing appearance, including the use of a plate that extends between two sections of the drum carrier frame that run parallel down the torso of the user, with the plate, frame, and a belly plate forming a rectangular box identical to that of PMI's CX Series Carrier;

c.    PMI's belly plate design, including the elliptically shaped belly plate with an arcuate shaped top-line plane being perpendicular to the two sections of the drum carrier frame that run parallel down the torso of the user before angling downward after the top line plane breaks the outside edge of the two sections of the drum carrier that run parallel down the torso of the user, and the elongated belt receiving slot on each side edge as well as an abdominal cushion that extends beyond the edges of the belly plate;

d.    PMI's J-mounts that are the same cross-section size and shape as the rigid frame; and

e.    PMI's all black color scheme, including the same tones of black used by PMI for the rigid frame, J-mounts, shoulder pads, shoulder pad fasteners, shoulder pad stitched border, belly plate, and the abdominal cushion attached to the belly plate.

85.    Hoshino's use of PMI's Trade Dress, and products confusingly similar therewith, is deliberate and Hoshino's TAMA Fieldstar Carriers clearly imitate many of the distinctive visual features characterizing PMI's CX Series Carriers.

86. Defendants' products were introduced to trade off of the good will, secondary meaning, and success that Plaintiffs had accrued in Plaintiffs' trade dress and products and in the marketplace.

87. Hoshino uses PMI's Trade Dress to confuse and mislead customers into believing that their goods originate from, are sponsored by, or are affiliated with Pearl, and that use poses a likelihood of confusing customers into believing that Defendants' goods originate from, are sponsored by, or are affiliated with Pearl.

88. Defendants' acts of infringement were and are willful and deliberate. Indeed, Hoshino manufactures "All Access" TAMA Fieldstar Carriers that are designed to accommodate snare drums, tenor drums, and bass drums from various manufacturers—including those manufactured by Pearl. *See* Tama Drums | Fits the Bill, https://www.tama.com/usa/news/detail/20240717043920.html (last visited June 27, 2025).

89. Hoshino's TAMA Fieldstar Carriers are virtually identical to PMI's CX Series Carriers without a marching drum attached, but when a Pearl marching drum is attached to an "All Access" TAMA Fieldstar Carrier, Hoshino's product becomes indistinguishable from PMI's product.

90. Hoshino's unauthorized imitation of PMI's unique and proprietary product designs and trade dress was (and is) intentionally calculated to confuse consumers about the source, affiliation, association, and/or sponsorship of the TAMA Fieldstar Carriers and to unlawfully divert sales from PMI to Hoshino and/or its affiliates.

91. Indeed, although Hoshino's consumer marketing and sales of the TAMA Fieldstar Carrier exclusively use PMI's Trade Dress, drum corps that, upon information and belief, are

sponsored by Hoshino may be given TAMA Fieldstar Carriers that do not use PMI's Trade Dress. *See e.g.*, TAMA Drums | The Energy & Excitement of WGI 2025, https://www.tama.com/usa/news/detail/20250416214227.html (last visited June 27, 2025) (showing photos of Broken City Percussion, Inc. using TAMA Fieldstar Carriers more closely aligned in appearance to Hoshino's traditional drum carriers described and shown in ¶ 81).

**COUNT I**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,671,261**

92. PMI re-alleges here all of the allegations set forth in paragraphs 1 through 91 above as if fully set forth herein.

93. The '261 Patent is a valid and enforceable patent, and PMI has complied with all marking and notice requirements of 35 U.S.C. § 287 by noticing the '261 Patent in connection with the CX Airframe Drum Carriers that Plaintiff manufactures and sells.

94. Hoshino Japan makes, uses, sells, offers for sale and imports into the United States the infringing TAMA Fieldstar Carriers.

95. Hoshino America imports, offers for sell, sells, distributes, and promotes the infringing TAMA Fieldstar Carriers in the United States.

96. Accordingly, Defendants have directly infringed, and are still directly infringing, the '261 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, selling, offering for sale, or importing the TAMA Fieldstar Carriers, which embody the Patented Drum Carrier of the '261 Patent.

97. Defendants' infringement of the '261 Patent includes, but is not limited to, at least Claim 1 of the '261 Patent.

98. Defendants have profited and will continue to profit from their infringement of the '261 Patent.

99. Defendants' infringement of the '261 Patent has caused and will continue to cause PMI substantial monetary harm, including loss of profits, for which PMI is entitled to receive damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

100. Monetary damages, however, are not fully capable of compensating PMI for Defendants' infringement of the '261 Patent.

101. PMI has been, and continues to be, damaged and irreparably harmed by Defendants' infringement of the '261 Patent.

102. PMI will continue to suffer irreparable harm, and Defendants' infringement of the '261 Patent will continue, unless this Court enjoins the infringement of the '261 Patent.

103. Further, Defendants' infringement of the '261 Patent has been willful, deliberate, and with full knowledge that the making, using, selling, offering for sale and importing the TAMA Fieldstar Carriers infringes the '261 Patent, justifying enhanced damages being awarded to PMI up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

104. Defendants' willful infringement of the '261 Patent, among other actions, renders this an exceptional case, justifying the award to PMI of its reasonable attorney fees, in accordance with 35 U.S.C. § 285.

**COUNT II**
**INDUCED INFRINGEMENT OF U.S. PATENT NO. 7,671,261**

105. PMI re-alleges here all of the allegations set forth in paragraphs 1 through 91 above as if fully set forth herein.

106.    The '261 Patent is a valid and enforceable patent, and PMI has complied with all marking and notice requirements of 35 U.S.C. § 287 by noticing the '261 Patent in connection with the CX Series Carriers that Plaintiff manufactures and sells.

107.    Hoshino Japan makes, uses, sells, offers for sale and imports into the United States the infringing TAMA Fieldstar Carriers.

108.    Hoshino America offers for sell, sells, distributes, imports, and promotes the infringing TAMA Fieldstar Carriers in the United States.

109.    At no time has Pearl granted Hoshino or its distributors, retailers, customers, or others, including the Bluecoats, Steve Weiss Music, Inc., Guitar Center, Inc., or Sweetwater Sound, LLC, permission to use, offer for sell, sell, or distribute Hoshino's products that fall within the scope of the claims of the '261 Patent.

110.    Upon information and belief, both by making, using, selling, offering for sale, and importing the TAMA Fieldstar Carriers in the United States that embody the Patented Drum Carrier by encouraging its suppliers, wholesalers, distributors and retailers, customers and others, to use, offer for sell, sell, or distribute the TAMA Fieldstar Carriers, Hoshino is inducing infringement of the '261 Patent in violation of 35 U.S.C. § 271(b).

111.    With knowledge of the '261 Patent, Defendants have and continue to induce others to infringe the '261 Patent without a good faith belief that the '261 Patent is not infringed and/or invalid.

112.    Defendants' actions induce infringement of at least, but not limited to, Claim 1 of the '261 Patent.

113. Defendants have profited, and will continue to profit, from inducing infringement of the '261 Patent.

114. Defendants' infringement of the '261 Patent has caused and will continue to cause PMI substantial monetary harm, including loss of profits, for which PMI is entitled to receive damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

115. Monetary damages are not fully capable of compensating PMI for Defendants' infringement of the '261 Patent.

116. PMI has been, and continues to be, damaged and irreparably harmed by Defendants' infringement of the '261 Patent.

117. PMI will continue to suffer irreparable harm, and Defendants' infringement of the '261 Patent will continue, unless this Court enjoins the infringement of the '261 Patent.

118. Further, Defendants' infringement of the '261 Patent has been willful, deliberate, and with full knowledge that the making, using, selling, offering for sale and importing the TAMA Fieldstar Carriers infringes the '261 Patent, justifying enhanced damages being awarded to PMI up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

119. Defendants' willful infringement of the '261 Patent, among other actions, renders this an exceptional case, justifying the award to PMI of its reasonable attorney fees, in accordance with 35 U.S.C. § 285.

## COUNT III
## LANHAM ACT INFRINGEMENT UNDER 15 U.S.C. §1125(a)

120. PMI re-alleges here all of the allegations set forth in paragraphs 1 through 91 above as if fully set forth herein.

121.    The design of PMI's CX Series Carriers and their overall visual appearance are unique and distinctive in the marketplace. Their distinctive appearance indicates PMI as the source of PMI's products, and PMI's trade dress is unique and entitled to protection under the Lanham Act.

122.    PMI's Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning in the marketplace.

123.    PMI has extensively and continuously promoted and used its trade dress in the United States and worldwide.

124.    Hoshino is unfairly competing with PMI by adopting an infringing trade dress to identify its TAMA Fieldstar Carriers.

125.    Hoshino's improper and unauthorized use of PMI's Trade Dress includes, but is not limited to, copying PMI's design elements relating to the shoulder pads, belly plate and abdominal cushion, framing appearance, and color scheme of PMI's CX Series Carriers and incorporating those design features into the TAMA Fieldstar Carriers.

126.    Hoshino's conduct constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a).

127.    The intent and result of Hoshino's actions have been a palming off of Hoshino's Fieldstar line of drum carriers as emanating from or being endorsed by PMI, causing confusion, mistake, and deception among the public as to the source and origin of those marching drum carriers.

128.    The design and overall visual appearance of Hoshino's TAMA Fieldstar Carriers is confusingly similar to PMI's products and tends to falsely represent or designate the source of

-29-

Hoshino's products as being affiliated with, connected with, or associated with PMI and tends falsely to represent or designate that Hoshino's products originate with, are sponsored or approved by, or are otherwise connected with PMI, when in fact Hoshino's products are neither connected with nor authorized by PMI.

129.    Hoshino's conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source or approval of the infringing products, or as to a possible affiliation, connection, or association between PMI, Hoshino, and the infringing products.

130.    Hoshino's past and ongoing imitation of PMI's Trade Dress has been (and continues to be) intentional, deliberate, and willful and has been (and continues to be) likely to cause confusion or mistake in the marketplace and to deceive purchasers.

131.    Hoshino's conduct was also done with the intention of passing off Hoshino's TAMA Fieldstar Carriers as somehow authorized by, affiliated with, or sponsored by PMI, and it has had (and will continue to have) an adverse impact on PMI as well as an economic effect on interstate commerce.

132.    Hoshino's use of an infringing trade dress has caused and, unless restrained, will continue to cause injury to PMI.

133.    Defendants have profited from their illegal and bad faith activities.

134.    Plaintiffs have suffered, and continue to suffer, substantial damages as a result of Defendant' bad faith activities, in an amount to be determined by the jury and this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Pearl Musical Instrument Company Limited respectfully requests that this Court enter judgment against Defendants, granting PMI the following relief:

A.      Determining that Defendants are liable for all of the claims, causes of action, and damages set forth in this First Amended Complaint;

B.      Finding that Defendants have directly infringed and induced infringement of one or more claims of the '261 Patent;

C.      Awarding PMI damages, including enhanced damages and lost profits, pursuant to 35 U.S.C. § 284, for Defendants' infringement of the '261 Patent, in an amount to be determined at trial, but in no event less than a reasonable royalty;

D.      Awarding PMI pre-judgment and post-judgment interest to compensate PMI for the damages it has sustained;

E.      Awarding PMI all of its costs and disbursements incurred in bringing this action;

F.      Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding PMI its reasonable attorney fees, costs, and expenses;

G.      Permanently enjoining Defendants, their subsidiaries, affiliates, parents, successors, assignees, officers, agents, servants, employees, and all others acting in concert or in participation with them, or any of them, from further acts of direct infringement, contributory infringement, and inducement of infringement of the '261 Patent;

H.      Finding that Defendants have engaged in federal trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

-31-

I.      Requiring Defendants to account for and pay to PMI all of Defendants' gains, revenues, profits and advantages attributable to or derived by Defendants' trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

J.      Awarding PMI damages for trade dress infringement and that the damages relating to Defendants' trade dress infringement be trebled pursuant to 15 U.S.C. §1117;

K.      Awarding PMI its reasonable attorney fees, costs, and expenses in accordance with 15 U.S.C. §1117;

L.      Permanently enjoining Defendants, their subsidiaries, affiliates, parents, successors, assignees, officers, agents, servants, employees, and all others acting in concert or in participation with them, or any of them, from offering for sale, selling or marketing merchandise that copies or imitates any of PMI's trade dress, be permanently enjoined from offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that Defendants' merchandise in any way originates with, is sanctioned by, or is affiliated with PMI; and be permanently enjoined from engaging in any activities violating PMI's rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and

M.      Awarding PMI any further relief as the Court may deem just and proper.

## JURY DEMAND

PMI respectfully demands a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

June 27, 2025

Respectfully submitted,

PLAINTIFF PEARL MUSICAL
INSTRUMENT COMPANY CO. LTD


By: /s/ David R. Fine
David R. Fine (Pa. No. 66742)
K&L GATES LLP
17 North 2nd Street, Suite 1800
Harrisburg, PA 17101
Tel: 717.231.5820
Email: david.fine@klgates.com

Terry L. Clark (*pro hac vice*)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Avenue NW, Suite 300
Washington, D.C. 20004
Tel: (202) 827-2950
Fax: (202) 478-0400
Email: tclark@bassberry.com

Caleb H. Hogan (*pro hac vice*)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
Tel: (615) 742-6200
Fax: (615) 742-6293
Email: caleb.hogan@bassberry.com

*Attorneys For Plaintiff Pearl Musical
Instrument Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 27th day of June 2025, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ David R. Fine
David R. Fine