IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PEARL MUSICAL INSTRUMENT :
COMPANY CO. LTD.,
   *Plaintiff(s),* :
      :
  v.   : **CIVIL NO. 23-3220**
      :
HOSHINO GAKKI CO., LTD. et al., :
   *Defendant(s).* :
      :

**Scott, J.**         **July 7, 2026**

**MEMORANDUM**

## I. INTRODUCTION

On June 27, 2025, Plaintiff Pearl Musical Instrument Company Co. Ltd. filed its First Amended Complaint (ECF No. 75) ("FAC") alleging that Defendants Hoshino Gakki Co., Ltd., and Hoshino (U.S.A.) Inc. ("Defendants" or "Hoshino") infringed on Plaintiff's Patent No. 7,671,261 ("261 Patent") under 35 U.S.C. § 1, et seq., and specifically § 271. Plaintiff also alleged that Defendants engaged in trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) regarding Plaintiff's CX Series Carriers. Plaintiff and Defendants are manufacturers and sellers of drums and drum carriers, among other instruments and accessories.

On July 25, 2025, Defendants filed a Motion to Dismiss Plaintiff's trade dress infringement claim under Fed. R. Civ. P. 12(b)(6) arguing that the FAC "fails to adequately state a claim of trade dress infringement because: (1) the FAC fails to articulate the elements comprising the trade dress of its CX Series Carriers; (2) the purported trade dress is functional; and (3) the FAC fails to allege inherent distinctiveness or secondary meaning. Each one of these failures independently justifies dismissing the claim." (ECF No. 77-1 at 7). Plaintiff responded in opposition to

1

Defendants' Motion (ECF No. 91)[1], to which Defendants replied in support of the Motion (ECF No. 82).  On June 3, 2026, the Court held a hearing on the Motion. For the reasons discussed herein, the Court finds Plaintiff's trade dress infringement claim as stated in the FAC to be insufficient and hereby **GRANTS** Defendants' Motion to Dismiss.  The Court **DISMISSES** Plaintiff's trade dress claim **WITHOUT PREJUDICE** solely due to the insufficient facts pled regarding nonfunctionality.

## II.    LEGAL STANDARD

### a. <u>Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

---

[1] Plaintiff filed ECF No. 91 as a corrected version of ECF No. 80.  The documents are substantively identical.

b. **Trade Dress**

Trade dress is "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (citing *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)). Trade dress protection is meant to "secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007); *see also Fair Wind Sailing*, 764 F.3d at 309. But there is no general prohibition against copying goods and products, and trade dress protection is only meant to cover "incidental, arbitrary or ornamental product features which identify the product's source." *Fair Wind Sailing*, 764 F.3d at 309 (citing *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)).

To establish trade dress infringement under the Lanham Act, a plaintiff must prove "(1) the allegedly infringing design is nonfunctional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals*, 511 F.3d at 357. In addition to these elements, the plaintiff must "articulat[e] the specific elements which comprise its distinct dress." *Fair Wind* Sailing, 764 F.3d at 309 (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed. 2014) ("[T]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list."). Thus, prior to assessing whether trade dress is even protectable, district courts "should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business." *Id.*

3

## III.  DISCUSSION

Defendants argue that Plaintiff's trade dress claim insufficiently articulates the elements that comprise Plaintiff's trade dress.  (ECF No. 77-1 at 15).  The Court disagrees and discusses Plaintiff's description of its trade dress below.[2]

### a.  Plaintiff's trade dress description

Plaintiff describes its trade dress as "includ[ing] visual appearance of its CX Series Carriers, which provide the visual appearance, both alone and in combination with one or more other design features of:

a.  A drum carrier having a u-shaped rigid tubular or rod frame that rests on the shoulders and across the back of the user, a transition area having frame sections extending horizontally across the wearer's chest toward each other, two portions of the frame extending downward from the transition area with a consistent distance therebetween for attachment to a belly plate;

b.  Shoulder pad(s) removably attached to a rigid frame via proportionally spaced flexible hook and loop fasteners such that at least two fasteners are visible above each shoulder apex when worn,  the shoulder pads further being proportionally wider than the rigid frame, the shoulder pads having a stitched border that runs along and near the edge of the shoulder pads, collectively the shoulder pad(s) being u-shaped with rounded ends positioned at or near the front of each shoulder of the wearer when worn, and the shoulder pads attached such that a substantial portion of the rigid frame is visible above the shoulder pads when in use;

---

[2] Defendant makes no argument regarding the third element, likelihood of confusion, so the Court does not address this element.

4

    c.  A rectangular elongated plate attached to and extending between the two downward extending sections of the drum carrier at or near the transition area and downward extending frame portions;

    d.  An elliptically shaped belly plate with an arcuate shaped top line substantially perpendicular to the two sections of the downwardly extending frame, and having a pad with a visible edge at or near the belly plates perimeter;

    e.  The belly plate also having two elongated belt-receiving slots, one of each located near the side edge of the belly plate;

    f.  A mounting mechanism positioned on an exposed surface of the belly plate for engaging the downward extending portions of the frame and holding two J-mounts or rods capable of receiving a drum;

    g.  The carrier is substantially unicolor where substantially all of the major visible components of the carriers are of the same color; and

    h.  The color scheme for all of the foregoing design elements—including the frame, shoulder pads, belly plate, and central plate—is the color black."

FAC ¶ 71.  Plaintiff proceeds to state that "[t]he combination and arrangement of the design elements set forth above constitute the trade dress owned by PMI and are widely recognized by the general consuming public of the United States as designations of the source of PMI's goods or services." *Id.* ¶ 72.

Defendants take issue with Plaintiff's description of the trade dress because it covers the features listed "both alone and in combination with one or more other design features." ECF No. 77-1 at 15.  Defendants assert that such a qualifier is impermissible because it "obscur[es] the definition of the claimed trade dress" by being "open-ended." *Id.* at 15-16.  Regarding this

5

argument, the Court is persuaded by Plaintiff's explanation of its description vis-à-vis these eight features. That is, Plaintiff's description does not mirror the prohibited language in *Digital Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305, 310-11 (W.D. Pa. 2022), because Plaintiff's description is indeed defined by the eight visual elements on their own or taken together. The visual elements here are clearly stated. *Cf. Classic Touch Décor, Inc. v. Michael Aram, Inc., No. 15-CV-453 (NGG) (RLM), 2015 U.S. Dist. LEXIS 144636 at *12* (E.D.N.Y. Oct. 23, 2015) (noting in the Rule 12(c) context that plaintiff "cannot claim trade dress protection for an element that appears 'sometimes' or only 'in some instances,' because it renders the presence of the element meaningless."); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 U.S. Dist. LEXIS 219857, at *17-18 (C.D. Cal. Oct. 29, 2020) ("Courts have often dismissed trade dress claims for failing to provide a complete list of elements where the list of alleged trade dress elements is preceded by a non-limiting qualifier."); *see also Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 415 n.16 (D.N.J. 2012) (noting that the use of "including, but not limited to" permitted the court to construe the trade dress as alleged because "[p]laintiffs have had sufficient time to determine exactly the contours of the alleged trade dress violation[.]")

Here, Plaintiff does not allege that the features occur only sometimes or in some instances. Instead, the Court construes Plaintiff's language to mean that the product may be defined by either the individual elements on their own *or* in combination with each other. The Court thus construes the qualifier as limited to the closed universe of discrete elements listed and concludes that Defendants have adequate notice of the alleged trade dress.

**b. Nonfunctionality of the purported trade dress**

Although the Court agrees that Plaintiff's description of visual elements is sufficiently specific, the Court agrees with Defendants that Plaintiff's allegations of nonfunctionality are

6

insufficient.  ECF No. 77-1 at 22-23.  A feature is nonfunctional when it is "unrelated to []

consumer demand … and serves merely to identify the source of the product." *Fair Wind* Sailing,

764 F.3d at 311 (citing *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)).  And, as

the Third Circuit has observed, "the fact that individual elements of the trade dress may be

functional does not necessarily mean that the trade dress as a whole is functional; rather, functional

elements that are separately unprotectable can be protected together as part of trade dress." *Fair*

*Wind Sailing*, 764 F.3d at 311 (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252,

1259 (9th Cir. 2001)) (alterations and internal quotation marks omitted).

Upon discussing the trade dress infringement claim, Plaintiff merely makes several

conclusory statements regarding the nonfunctionality of its drum carriers.  *See* ECF No. 75 at ¶ ¶

66, 67, 74, 122.  Such threadbare recitals do not pass muster.  To survive the motion to dismiss

stage, Plaintiff must include adequate factual information that permits the Court to infer

nonfunctionality when construing the allegations in its favor.  Plaintiff has failed to do so.

Furthermore, Defendants argue that the 261 Patent is strong evidence in favor of functionality.

Without Plaintiff providing other facts explaining the product's nonfunctionality, the Court cannot

make a reasonable inference of nonfunctionality based on the current allegations.[3]

### c.  Inherent Distinctiveness or Secondary Meaning

The Court disagrees with Defendants that Plaintiff has not sufficiently pled "how Plaintiff's

alleged trade dress is inherently distinctive or has secondary meaning." ECF No. 77-1 at 23.  A

mark, including non-word marks, is inherently distinctive if its "intrinsic nature serves to identify

a particular source." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 211 (2000) (citing *Two*

*Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citations omitted)).  A mark may still

---

[3] To be clear, the Court is not making a finding of functionality or nonfunctionality at this stage.  The Court merely concludes that Plaintiff has provided inadequate information at this juncture to support a finding of nonfunctionality.

be distinctive "even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Id.* (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n.11 (1982)).

Here, Defendants include the "fact of copying" as one element courts consider when determining the existence of secondary meaning. ECF No. 77-1 at 24. Indeed, the Third Circuit has enumerated a list of non-exhaustive factors for courts to consider when assessing secondary meaning. *See Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438 (3d Cir. 2000) ("(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion."). Plaintiff, however, argues that "intentional copying of PMI's Trade Dress, as amply alleged here, can provide a presumption of secondary meaning in the asserted trade dress." ECF No. 91 at 23.

Notably, the Court need not find evidence in support of each factor to plausibly infer secondary meaning at this stage. *See I.M. Wilson, Inc. v. Otvetstvennostyou "GRICHKO"*, 500 F. Supp. 3d 380, 411 (E.D. Pa. 2020). The Court disagrees, however, with Plaintiff's presumption that copying alone is sufficient, instead viewing it as one of many factors that may establish secondary meaning. The Court nonetheless finds this prong satisfied due to Plaintiff's allegations pertaining to: Defendants copying Plaintiff, Plaintiff's CX Series Carriers "representing approximately 90 percent [] of the marching drum carrier market[,]" a large portion of Plaintiff's customer base purchasing "all or nearly all of their percussion instruments and related products from a single source, such as Pearl[,]" and Plaintiff's manufacturing and selling of the CX Series

Carrier since 2010 whereas Defendants released their competitor carrier in 2023. *See* ECF No. 75 ¶¶ 125, 91, 33, 27. Thus, based on the facts alleged, the Court finds secondary meaning to be pled sufficiently.

**IV.    CONCLUSION**

The Court **GRANTS** Defendants' Motion to Dismiss. The Court **DISMISSES** Plaintiff's trade dress claim **WITHOUT PREJUDICE** solely due to the insufficient facts pled to support a finding of nonfunctionality, as discussed above. The Court permits Plaintiff to amend its complaint once more to cure this deficiency. An appropriate Order accompanies this Memorandum.